**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATRICIA A. SCHRAGE, | No. CIV S-06-0579-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 11) and defendant's cross-motion for summary judgment (Doc. 18).

/ / /

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted for his predecessor. The Clerk of the Court is directed to update the docket to reflect the above caption.

1

# I. BACKGROUND

Plaintiff applied for social security benefits on May 7, 2002. In her application, plaintiff claims that disability began on December 15, 1999. Plaintiff claims her disability consists of a combination of: (1) degenerative disc disease affecting her neck; (2) chronic pain in her neck, shoulders, and upper chest; (3) pain and swelling of her knees; and (4) pain, cramping, and swelling of her legs due to varicose veins and bursitis. Plaintiff is a United States citizen born October August 4, 1946, with a high school education.

Plaintiff's claim was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on February 12, 2003, before Administrative Law Judge ("ALJ") Richard D. Wurdeman. In his November 28, 2003, decision, the ALJ made the following findings:

1. The claimant is insured for Title II disability benefits through March 2005;

2. The claimant has not engaged in substantial gainful activity since her alleged onset date;

3. The claimant has the severe impairments of fibromyalgia,[2] cervical degenerative disc disease, and varicose veins;

4. The claimant's impairments do not meet or equal an impairment in the Listing of Impairments . . . ;

5. The claimant's subjective complaints are not credible;

6. The claimant has the residual functional capacity for sedentary work with a sit/stand option and no exposure to temperature extremes;

7. The claimant is unable to perform past relevant work;

8. The claimant is of advanced age, with a high school education and a history of skilled work;

9. The claimant has the following transferable skills: apply basic math, records, estimate quantities, knowledge of restaurant industry, speaking distinctly, writing clearly, listening, judgment, and analyzing and interpreting policies and procedures;

---

[2] Chronic musculoskeletal pain, the cause of which is uncertain.

      10.    There are jobs existing in significant numbers that the claimant is able to perform; and

      11.    The claimant is not disabled.

On April 1, 2004, the Appeals Council granted plaintiff's request for review and remanded the case. In its remand order, the Appeals Council stated:

> The hearing decision, Finding #6, found that the claimant can do sedentary work with a sit/stand option and no exposure to temperature extremes, but does not provide adequate reasons for the exertional restrictions found. The decision indicated that Dr. Vandana Sharma's treatment notes at Exhibit 6F show that the claimant is unable to sit or stand for prolonged periods. The evidentiary basis for the comment is unclear. The treatment record at Exhibit 6F reveals degenerative joint disease of the cervical spine, but only mild (+1) tenderness in the knees and no obvious impairment to keep the claimant off her feet for light work, such as past relevant work. New evidence with the request for review includes 2003 treatment notes from Rashmi B. Dixit, M.D., with assessment of fibromyalgia and diffuse musculoskeletal pain and some depressive symptomatology, with good response to Zoloft and Elavil and other medication. The evaluation of subjective complaints included little discussion of specific treatment and no evaluation of the lay witness statements at Exhibits 12E and 13E. The decision mentions transferable skills, but does not identify which skills are transferable to the job identified. Additional evidence is needed to clarify the nature and severity of the musculoskeletal conditions;

The Appeals Council gave the following instructions on remand:

      1.    Obtain additional evidence concerning the claimant's musculoskeletal and depressive disorders in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence. The additional evidence should include updated treatment records, and may include, if warranted and available, consultative orthopedic and/or mental status examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments;

      2.    Address lay witness statements, providing germane reasons for the weight accorded each statement. Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evidence of symptoms;

      3.    Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and

/ / /

        4.       Obtain supplemental evidence from a vocational expert to clarify acquired work skills and the effect of the assessed limitations on the claimant's occupational base, and to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

On remand, a second hearing was held on April 18, 2005, before ALJ Mark C. Ramsey. In his July 11, 2005, decision, the ALJ made the following findings:

        1.       The claimant met the disability insured status requirements of the Act on June 15, 2000, and continued to meet them through March 2005;

        2.       The claimant has not engaged in substantial gainful activity since June 15, 2000;

        3.       The medical evidence establishes that the claimant has severe fibromyalgia, degenerative cervical disease, and varicose veins, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4; her depression is not severe;

        4.       The claimant's testimony is not substantially credible for the reasons stated in the body of this decision;

        5.       The claimant has the residual functional capacity to perform the requirements of work except for performing prolonged lifting in excess of 10 pounds and occasional lifting of more than 20 pounds;

        6.       The claimant has the residual functional capacity to perform light work;

        7.       The vocational expert credibly testified that the claimant is able to perform her past relevant work as a dispatcher for a trucking company and operations manager; and

        8.       The claimant was not under a disability . . . at any time through the date of this decision.

Based on these findings, the ALJ concluded that plaintiff was not entitled to benefits. After the Appeals Council declined further review on January 27, 2006, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues:  (1) the ALJ failed to properly consider the evidence from lay witnesses concerning plaintiff's pain; (2) the ALJ improperly found her testimony to be not credible; (3) the ALJ did not account for plaintiff's pain in concluding that she had the residual functional capacity for light work; and (4) the hypothetical questions posed by the ALJ did not reflect an accurate description of her functional ability.

A.     **Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

The ALJ, however, need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395.  As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See id.  As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity. Id.

In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony. See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments. Id.  The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision. See id.  Noting that the lay witness testimony in question was "consistent with medical

evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work." Id. at 1053.  The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless. See id. at 1054-55.  The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at 1395.  If, however, lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it.  See Stout, 454 F.3d at 1053.  However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  See id.  Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

///

///

///

As to the lay witness evidence in this case, the ALJ stated:

> The record contains a letter from the claimant's husband, Sid Schrage, dated September 16, 2003, which stated that his wife experiences debilitating pain and extreme fatigue, requires assistance from him to do the housework, elevates her legs daily, and spends much of her day resting in a chair.
>
> The record also contains a letter from friend, Beverly Kendrick, dated September 12, 2003, which stated that she has observed the claimant having problems with pain and fatigue, headaches, and muscle and joint pain. She further stated that the claimant now has difficulty with personal maintenance, spends much of her time resting in a chair, is oftentimes tearful, and has difficulty cooking.

The ALJ then stated:

> The Administrative Law Judge has carefully considered the claimant's fibromyalgia, degenerative cervical disease, and varicose veins in terms of the criteria of Social Security Ruling 96-7p, and has concluded that her complaints are out of proportion to the overall weight of the objective medical evidence of record and other factors of a non-medical nature and, therefore, renders her testimony (as well as the statements from her husband and friend) not substantially credible.

Following this statement, the ALJ set forth (in a single paragraph longer than one full single-spaced page of the hearing decision) the portions of the record which undermine the credibility of plaintiff's testimony regarding pain. Nowhere in this discussion does the ALJ mention any of the specific statements from plaintiff's husband or friend.

Because plaintiff's claims involve allegations of pain and fatigue, the ALJ is required to consider lay witness evidence. See id. Where, as here, the ALJ discounts the statements of lay witnesses, proper consideration requires that the ALJ give reasons that are germane to each witness. See Dodrill, 12 F.3d at 919. Plaintiff argues that the ALJ failed to meet this standard (and failed to comply with the Appeals Council remand order) in rejecting the statements from plaintiff's husband and friend. Specifically, plaintiff contends that the ALJ failed to offer reasons germane to each witnesses' statement. Rather, according to plaintiff, the ALJ merely rejected these statements ". . . as an afterthought within parentheses."

/ / /

In opposition, defendant cites Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), and Tidwell v. Apfel, 161 F.3d 599 (9th Cir. 1999), in support of his position that the ALJ's rejection of the lay witness statements in this case was proper. In Greger, the ALJ rejected statements from a lay witness concerning the claimant's impairments because the statements were inconsistent with the claimant's " . . . presentation to treating physicians during the period at issue, and with [the claimant's] failure to participate in cardiac rehabilitation." Gregor, 464 F.3d at 972. The ALJ also rejected the lay witness statement because of her close relationship with the claimant, concluding that the witness was influenced by her desire to help the claimant. See id. The Ninth Circuit concluded: "The ALJ's reasons for doubting [the lay witness'] credibility are germane to [the witness] . . . ." Id. In Tidwell, the lay witness statements at issue were based solely on ". . . observations of [the claimant's] facial expressions, the manner in which [the claimant] walked, and the fact that [the claimant] had dropped objects." Tidwell, 161 F.3d at 602. The Ninth Circuit concluded that the ALJ properly rejected this lay witness evidence because it only provided observations which did not establish that the claimant was limited in any manner and because it did not support the claimant's contention that she was disabled prior to the expiration of her disability insured status. See id.

Defendant's citations to Greger and Tidwell are unavailing. In both of those cases, the ALJ gave reasons specific to each witness. In Gregor, the ALJ concluded that the witness was not credible due to a bias to help the claimant. This is a reason germane to the specific witness. Similarly, in Tidwell, the ALJ rejected the lay witness evidence because it did not establish limitations and because it did not speak to the relevant onset date. Again, these were reasons germane to the specific witness. In contrast, the ALJ in this case merely rejected the evidence from plaintiff's husband and friend for the same reasons he rejected plaintiff's testimony as not credible. In particular, the ALJ did not cite any reasons specific to either plaintiff's husband or her friend for not believing their statements.

///

1    While the court concludes that the ALJ's analysis of the lay witness evidence in
2 this case was flawed, the court does not agree with plaintiff's assertion that a remand for further
3 proceedings would be futile because she would be disabled if the statements were credited. The
4 court has not concluded that the statements should be credited. Rather, the court concludes that
5 the current analysis is flawed because it does not specify reasons germane to each witness. It
6 could well be that, after a proper analysis, the witnesses' statements would still not be credited.
7 Therefore, a remand, as opposed to an award of benefits, is appropriate.

### B.    Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

In rejecting the plaintiff's testimony as not credible, the ALJ stated that the testimony was ". . . out of proportion to the overall weight of the objective medical evidence of record and other factors of a non-medical nature . . . ." In the lengthy paragraph following this statement, the ALJ discussed the medical record. As to "non-medical" evidence, the ALJ stated:

> . . . Other evidence which is inconsistent with the claimant's testimony consists of her wide ranging daily living activities which include light housekeeping and cooking, shopping, maintaining her own appearance, and driving and occasional visits to the health club, accompaning [sic] her husband while he fishes, taking walks, reading, and attending church once or twice monthly. Consequently, the undersigned finds that the claimant has the residual functional capacity to perform light work (i.e., prolonged standing, walking, and lifting not more than 10 pounds and occasionally lifting not more than 20 pounds).

Plaintiff argues that this analysis, and particularly the conclusion that she could perform the full range of light work,[3] is not supported by substantial evidence in the record as a whole.

On June 19, 2002, both plaintiff and her husband submitted questionnaires concerning plaintiff's daily activities. Plaintiff states that she can only take short (15 minute) walks, that she takes frequent "cat naps" due to fatigue, and that she must use a traction device three to four times per week. While plaintiff stated that she can dress and groom herself, she indicated that she can only do household chores with the assistance of her husband. In particular, plaintiff noted difficulty with anything involving overhead reaching. As to meal preparation, plaintiff stated that she could only cook meals that did not involve lengthy preparation and that, when she does cook, it is usually for two to three days at once. As to grocery shopping, she states that she can only shop with her husband's assistance with putting items in the cart, pushing the cart, and loading the groceries in and out of the car. She states that

---

[3] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b).

she has difficulty putting away heavy items.  As to hobbies, plaintiff states that she can only do the things she enjoys – sewing, knitting, and playing the guitar – for ten to 15 minutes at a time due to "having to hold my head at uncomfortable angles."  She cannot fish, bowl, golf, or garden due to shoulder problems.  She even states that filling out the questionnaire was difficult due to pain.  Plaintiff states that she is in pain all the time.  Plaintiff's husband's statements are consistent with the foregoing.

The foregoing statements concerning plaintiff's daily activities and effect of pain does not appear to support the ALJ's finding that plaintiff can perform light work.  Specifically, plaintiff testified as to difficulty with even lifting grocery items into a shopping cart.  This is not consistent with an ability to lift 20 pounds occasionally.  Further, plaintiff testified as to time limitations – 15 minutes – on doing many activities.  The ALJ made no mention of such a limitation in his findings and offered no specific reason to reject such testimony.  As to pain, plaintiff testified that she is in pain all the time, which is consistent with the ALJ's conclusion that plaintiff suffers from "severe fibromyalgia."which is characterized by chronic muskuloskeletal pain.  Yet, beyond acknowledging that plaintiff suffers from chronic pain, the ALJ does not account for pain in his findings.  To the extent the ALJ concluded that plaintiff's pain complaints are not consistent with the medical record, it follows that fibromyalgia – which is pain with an unknown cause – would not necessarily be shown by the objective evidence.  The social security regulations regarding consideration of lay witness testimony recognize as much.  Social Security Ruling 83-13 requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  See also Smolen, 80 F.3d at 1288.

Based on the foregoing, the court finds that the ALJ's analysis of plaintiff's testimony, particularly her testimony regarding the effects of chronic pain associated with severe fibromyalgia, is not supported by the record.  It does not follow that, on the one hand plaintiff suffers from severe fibromyalgia but, on the other hand, is not limited by pain, as the ALJ

concluded.[4]  A remand is appropriate to allow the ALJ to reconsider plaintiff's testimony concerning her pain, in conjunction with the evidence from lay witnesses, in determining plaintiff's functional capacity.

### C.    **Residual Functional Capacity Finding**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  As discussed, above the court concludes that the ALJ has not properly considered the effect of pain associated with plaintiff's medically determinable severe fibromyalgia.  Therefore, on remand, the ALJ must necessarily re-evaluate plaintiff's residual functional capacity in light of her pain symptoms.

### D.    **Hypothetical Questions**

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

/ / /

/ / /

/ / /

---

[4] It seems far more likely that, at best, plaintiff can perform sedentary work given her pain complaints.  In fact, this was the finding in the first hearing decision.

As with the ALJ's residual functional capacity assessment, the ALJ's hypothetical questions were also necessarily flawed to the extent they did not account for plaintiff's pain. On remand, any hypothetical questions posed to a vocational expert should account for the limitations associated with pain resulting from severe fibromyalgia.

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;
2. The Commissioner's cross motion for summary judgment is denied;
3. This matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: July 26, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE